IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JARVIS EDMOND CARTER,<br><br>Defendant. | CR 24-129-BLG-SPW<br><br>ORDER DENYING DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S NOTICE |

On December 23, 2025, the Government filed a Notice of Intent to Admit Evidence of Other Crimes, Wrongs, or Acts by the Defendant. (Doc. 77). On January 28, 2026, Defendant Jarvis Edmond Carter filed a response opposing the Government's notice. (Doc. 82). The Government subsequently filed a reply. (Doc. 86). Although Carter did not file a separate motion seeking exclusion of the evidence, the parties have fully briefed the issue. The Court therefore construes Carter's Response in Opposition to the Government's Notice as a motion in limine seeking to exclude the Government's proposed evidence under Federal Rules of Evidence 404(b) and 414.

For the reasons stated below, Carter's request to exclude the proposed evidence is denied.

1

## I.    Background

### A.    Jane Does 1–7

Carter is charged in the Third Superseding Indictment with 11 counts involving seven victims. (Doc. 72). He faces seven counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), arising from conduct alleged against Jane Does 1–7. (*Id.* at 2–8). He is charged with one count of coercion and enticement, in violation of 18 U.S.C. § 2422(b), based on conduct involving Jane Doe 1. (*Id.* at 3). He is further charged with one count of sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a), and one count of distribution of controlled substances to an individual under 21, in violation of 21 U.S.C. §§ 841(a)(1) and 859(a) and 18 U.S.C. § 2, arising from conduct involving Jane Doe 5. (*Id.* at 5–7). Finally, he is charged with one count of obstruction of justice, in violation of 18 U.S.C. §§ 1512(b)(2)(B) and 2. (*Id.* at 8–9).

Carter met Jane Doe 1 toward the end of 2019, when she was 14 years old and living with her 18-year-old cousin in Billings, Montana. (Doc. 40 at 2). At that time, Carter was acting as the cousin's "sugar daddy." (*Id.*). Carter encouraged Jane Doe 1 to join an online application to find a sugar daddy of her own. (*Id.*). He then introduced her to his friend "Sylvester" on Snapchat, and the two began communicating. (*Id.* at 2–3). Jane Doe 1 never met Sylvester in person. (*Id.* at 3).

According to Jane Doe 1, Sylvester told her that he and Carter had discussed the idea that she should engage in sexual activity with Carter. (*Id.*).

In January 2020, Jane Doe 1 had sex with Carter on two occasions in exchange for cash and a phone. (*Id.*). On the first occasion, Carter picked her up under the pretense of taking her to Sylvester. (*Id.*). Instead, he brought her to his apartment and had sex with her in exchange for $180. (*Id.*). Carter told her he wanted her to be "prepared" for Sylvester. (*Id.*). Later that month, Jane Doe 1 again engaged in sexual activity with Carter in exchange for money. (*Id.*). On both occasions, Carter recorded the encounters. (*Id.*). Carter and Jane Doe 1 both sent the videos to Sylvester. (*Id.*). Carter also convinced Jane Doe 1 to send him nude images and videos and directed her on what to do in those images and videos. (*Id.*).

Carter met Jane Doe 2 in 2023 when she was 13 years old, through her aunt. (*Id.*). They began communicating on Facebook, and Carter provided Jane Doe 2 with the Snapchat account of an individual he claimed was his cousin. (*Id.* at 3–4). According to Jane Doe 2, the cousin's name began with an "S," and she believed he was approximately 16 or 17 years old. (*Id.* at 4). She sent "S" sexually explicit images and videos of her breasts and genital area in exchange for money. (*Id.*).

Carter later met Jane Doe 3 through Jane Doe 2 in the summer of 2024. (*Id.*). Jane Doe 3 was approximately 13 years old. (*Id.*). Jane Doe 2 told her that she had been communicating with two men on Snapchat and had sent them nude images and

3

videos in exchange for money. (*Id.*). Jane Doe 3 accompanied Jane Doe 2 when she met the two men to collect $60 for those images. (*Id.*). The men then added Jane Doe 3 on Snapchat and asked her to send sexually explicit images. (*Id.*). Jane Doe 3 believed the men's names were, or were similar to, "Savon" and "Jeremy." (*Id.*). The men sent her a list of requested images that matched the list previously sent to Jane Doe 2. (*Id.*). Although she initially resisted, Jane Doe 3 ultimately sent an image of her genital area and breasts. (*Id.*). Afterward, Carter met Jane Doe 3 at a park and gave her $40 for the image. (*Id.*). She was also offered $180–200 for additional photographs and videos. (*Id.*). Carter further attempted to persuade Jane Doe 3 to "hook up" with his younger cousin. (*Id.*).

Carter met Jane Doe 4 around July 2024, when she was 16 years old. (*Id.* at 5). At the time, Carter was dating one of her friends. (*Id.*). Carter asked Jane Doe 4 whether she would begin communicating with his 17-year-old cousin, Sylvester, and send him photographs in exchange for money. (*Id.*). Jane Doe 4 then communicated with Sylvester on Snapchat and sent him nude images and videos of her masturbating. (*Id.*). Carter paid Jane Doe 4 between $25 and $40 for the images. (*Id.*). Law enforcement later recovered the messages between "Sylvester" and Jane Doe 4 from Carter's phone. (*Id.*).

Carter met Jane Doe 5 on Facebook around November 2023, when she was 17 years old. (Doc. 86 at 7). Carter sent her a list of sexually explicit photos and

4

videos he wanted, and she provided them. (*Id.*). Jane Doe 5 met Carter in person multiple times, and on one occasion she had sex with him in exchange for money. (*Id.*). Carter also supplied Jane Doe 5 with mushrooms and acid and connected her with a methamphetamine dealer who sold her methamphetamine at a discounted price. (*Id.*).

Carter met Jane Doe 6 over Snapchat around July 2024, when she was 13 years old. (*Id.* at 8). He repeatedly asked her to send nude photographs in exchange for money and solicited her for sex. (*Id.*). She ultimately sent him an image of her nude chest, and he paid her $40. (*Id.*).

Beginning around August 2024, Carter also communicated with Jane Doe 7 on Snapchat. (*Id.*). She was 16 years old. (*Id.*). After he sent her a list of the photographs she wanted, she provided him with sexually explicit images and videos. (*Id.*).

B.    *Jane Doe 8 – Admitted 404(b) Evidence*[1]

In 2024, Jane Doe 8 met Carter via the MeetMe app, when she was 18 years old. (Doc. 40 at 6). Carter told her he wanted to be her "sugar daddy." (*Id.*). He later contacted her on Snapchat. (*Id.*). Carter began taking her out to dinner, buying

---

[1] The Court and counsel previously referred to this victim as Jane Doe 7. (Docs. 34, 39, 51). Subsequently, the Third Superseding Indictment was filed, which identified a different individual as Jane Doe 7. (Doc. 72 at 8). Consistent with the Government's explanation (Doc. 86 at 4), the Court now refers to the previously admitted 404(b) witness as Jane Doe 8. The Court refers to the victims in the Third Superseding Indictment by the names assigned to them therein.

her items, and offered to purchase her a bus ticket to visit her boyfriend in exchange for sex. (*Id.*). He also persuaded Jane Doe 8 to send him nude images. (*Id.*). Carter told her he had a cousin named Sylvester who wanted to meet her and repeatedly urged her to get to know him. (*Id.*). Jane Doe 8 believed Sylvester might not exist because she never met him and Carter carried three different phones. (*Id.*). After Carter's arrest, law enforcement recovered nude images of Jane Doe 8 from his electronic devices. (Doc. 34 at 3). The Court previously found Jane Doe 8's testimony admissible. (Doc. 51 at 9–12).

### C.    *Proposed Testimony*

#### 1.    *D.H.*

The Government intends to call D.H., who will testify that he was a friend of Carter's and, between 2020 and 2022, observed multiple naked women at Carter's various residences, including adult women and girls who looked to be 12 or 13 years old. (Doc. 77 at 4). On one occasion at Carter's trailer, two naked women emerged from the back of the trailer, and Carter told D.H. they could "do whatever they wanted" with the women. (*Id.*). D.H. also observed other men present in Carter's trailers while the women were naked. (*Id.*).

D.H. further states that he sold Carter drugs, including fentanyl, methamphetamine, PCP, and LSD. (*Id.*). According to D.H., Carter said he provided the women with drugs, kept them "strung out" on drugs, and exchanged

drugs for sex. (*Id.*). When D.H. asked how young the women were, Carter responded that their parents were also addicted, that the girls were from the reservation, had nowhere else to go, and that he continued giving them drugs in exchange for sex. (*Id.*). On one occasion, when D.H. quoted Carter a price for fentanyl pills, Carter offered to pay with sex from the women. (*Id.*).

The Government also plans for D.H. to testify that, on multiple occasions between 2020 and 2022, Carter offered to pay him $5,000 per month to transport two girls—one approximately 13 years old and the other approximately 15 years old—to Portland, Oregon, leave them at a hotel room Carter would pay for, and return every few days to collect money. (*Id.*). Carter explicitly told D.H. that the girls would be engaging in prostitution. (*Id.*). D.H. declined each time. (*Id.*).

### 2.    K.W.

K.W. was an inmate housed with Carter while Carter was incarcerated on the present charges. (*Id.* at 5). The Government intends to call K.W. to testify that Carter admitted producing sexually explicit content involving underage girls between the ages of 14 and 17, and that he supplied the girls with drugs obtained from D.H.'s girlfriend to keep them "strung out." (*Id.*). According to K.W., Carter stated that he purchased trailers and mobile homes for the purpose of producing this content. (*Id.*). K.W. believed the girls Carter used were from the Crow and Lame Deer reservations, and that Carter would pay them or provide drugs, buy them

clothing, and then either pimp them out or film videos with them. (*Id.*). Carter further told K.W. that other men were involved in creating the images, while Carter financed the operation and profited from it. (*Id.*).

### 3. *Jane Doe 9*

The Government intends to call Jane Doe 9 to testify that she communicated with Carter via Snapchat for several years between September 2019 and February 2024, beginning when she was approximately 13 years old. (*Id.*). Jane Doe 9 is unsure where she first encountered Carter but believes they initially connected on Kik. (*Id.*). At that time, she was communicating with other men in "Daddy Dom/Little Girl" chat groups on Kik. (*Id.*).

Carter sent Jane Doe 9 a photograph of his penis and solicited sexually explicit images by requesting nudes depicting specific parts of her body. (*Id.*). He continued to solicit sexually explicit images after she told him she was 13 years old. (*Id.* at 5–6). Carter offered to send her money in exchange for phone calls and sexually explicit images, but he never sent any money because she was unable to set up a CashApp account. (*Id.* at 6).

Carter also solicited Jane Doe 9 for sex. (Doc. 86 at 10). He discussed flying to her location to meet in person or relocating to where she lived. (Doc. 77 at 6). Carter told her he did not want to use a condom when they had sex but promised he would "pull out." (*Id.*).

## II.    Legal Standard

A motion in limine is a procedural mechanism to limit in advance specific testimony or evidence. *Frost v. BNSF Ry.*, 218 F. Supp. 3d 1122, 1133 (D. Mont. 2016).    The Court will grant a motion in limine if the contested evidence is inadmissible on all potential grounds. *Id.*

Rulings on motions in limine are provisional and "not binding on the trial judge" who "may always change [their] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).    Accordingly, the Court may readdress any of the parties' motions in limine as necessary at trial.

## III.    Discussion

The Court first considers the admissibility of D.H. and K.W.'s testimony under Rule 404(b)[2] and then evaluates the admissibility of Jane Doe 9's testimony under Rule 414.    For the reasons explained below, the Court concludes that the testimony of all three witnesses is admissible.

### A.    D.H. and K.W. – Rule 404(b) Evidence

As an initial matter, to the extent Carter contends that K.W.'s testimony is subject to other evidentiary rules (Doc. 82 at 7), he may raise those objections at

---

[2] The Rule 404(b) inquiry need not be undertaken if the evidence of the other acts is "inextricably intertwined" with the evidence of the charged offense. *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987). Although the Government references this doctrine in its notice (Doc. 77 at 4), its briefing on the motion in limine relies solely on Rule 404(b) (Doc. 86 at 10–17). Thus, the Court does not address whether the acts are inextricably intertwined.

trial. Likewise, Carter's arguments that K.W.'s testimony constitutes unreliable jailhouse testimony or that K.W. is a convicted felon (*id.* at 7–9) go to the weight of the evidence, not its admissibility, and may be explored on cross examination.

The Court therefore turns to the standards governing the admission of other-acts evidence. Rule 404(b) bars the admission of other crimes, wrongs, or acts when offered solely to prove a person's character, but such evidence may be admitted for non-propensity purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Huddleston v. United States*, 485 U.S. 681, 682 (1988) (citing Fed. R. Evid. 404(b)). Rule 404(b) is a "rule of inclusion," meaning that "[e]vidence of other crimes or acts is inadmissible under Rule 404(b), except where it tends to prove *only* criminal disposition." *United States v. Ayers*, 924 F.2d 1468, 1472–73 (9th Cir. 1991) (internal quotation marks omitted) (citing *United States v. Sangrey*, 586 F.2d 1312, 1314 (9th Cir. 1978)). "The threshold inquiry . . . is whether [the] evidence is probative of a material issue other than character." *Huddleston*, 485 U.S. at 686.

Under Ninth Circuit precedent, evidence of prior criminal conduct or bad acts is admissible under Rule 404(b) when "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that [the] defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Romero*, 282 F.3d

10

683, 688 (9th Cir. 2002). In applying this test, the Ninth Circuit has cautioned that "extrinsic acts evidence 'is not looked upon with favor,'" because "guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing." *United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993) (quoting *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1985)).

"In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test." *United States v. Montgomery*, 150 F.3d 983, 1000–01 (9th Cir. 1998); Fed. R. Evid. 403. The Government bears the burden of demonstrating that the proffered evidence satisfies both the Ninth Circuit's four-pronged test and Rule 403. *United States v. Lague*, 971 F.3d 1032, 1038 (9th Cir. 2020). The Government has met that burden here.

### 1.   *Materiality*

First, the proffered Rule 404(b) evidence tends to prove a material issue in this case. The Government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Mehrmanesh*, 689 F.2d 822, 830 (9th Cir. 1982). The Government offers the testimony of D.H. and K.W. to establish Carter's motive and intent—both permissible non-propensity purposes under Rule 404(b).

11

The Government anticipates that Carter may argue that he did not coerce or entice Jane Doe 1, or that she misunderstood his intent or the nature of their communications. (Doc. 86 at 12). It further anticipates that Carter may contend he did not pay Jane Doe 5 for sex, but instead loaned or gifted her money in the context of a friendship, indicating their sexual encounter was unrelated to any commercial purpose. (*Id.*).

The testimony of D.H. and K.W. is probative of Carter's intent and motive with respect to Jane Does 1 and 5 because it suggests Carter's involvement in commercial sex, sex trafficking, and prostitution. Carter's statements to these witnesses, if credited, support an inference that he intended to induce Jane Does 1 and 5 to engage in sexual conduct in exchange for money or other benefits. This evidence also tends to negate any argument that Jane Does 1 and 5 misunderstood Carter's intentions or the nature of their interactions with him.

Because the evidence is probative of a material point other than character, this first prong of the Rule 404(b) analysis is satisfied.

### 2.    *Remoteness in Time*

Second, the prior acts are not too remote in time. Remoteness is a flexible concept in the Rule 404(b) context, and the Ninth Circuit has not established a specific temporal cutoff for when prior acts become inadmissible. *United States v. Vo*, 413 F.3d 1010, 1018–19 (9th Cir. 2005). Instead, the inquiry focuses on whether

the acts retain probative value, and if "[t]he prior act evidence . . . is sufficiently similar to the charged conduct," that similarity may "render it probative despite the passage of time." *United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997). The Ninth Circuit has upheld the admission of Rule 404(b) evidence involving acts more than ten years old when they were similar to the charged conduct and probative of intent. *United States v. Spillone*, 879 F.2d 514, 519 (9th Cir. 1989).

Here, Carter's charged offenses span from late 2019 through 2024. D.H.'s testimony concerns conduct occurring between 2020 and 2022, which falls squarely within the timeframe of the charged offenses. Although K.W. did not specify when Carter committed the acts he described, Carter made the statements to K.W. while incarcerated on the present charges. While the timing of the *acts*—not the statement—is the focus of the remoteness inquiry, the context suggests Carter was describing conduct close in time to the charged offenses, not distant, unrelated acts. The Ninth Circuit's flexible approach permits the Court to consider such contextual indicators when evaluating remoteness. *See Johnson*, 132 F.3d at 1283.

Given the flexibility of this factor and the similarity of the conduct described, the Court concludes that the evidence is not too remote in time. The second prong is met.

/ / /

/ / /

### 3.    Sufficient Evidence of Prior Acts

Third, the evidence also satisfies the "low threshold" required under the third prong of the Rule 404(b) test.  At this stage, the Court need only determine whether a jury could reasonably find by a preponderance of evidence that the defendant committed the prior acts.  *See Huddleston*, 485 U.S. at 689.  "'[S]imilar act evidence is relevant . . . if the jury can reasonably conclude that the act occurred and that the defendant was the actor.'  This reliability threshold is not a high one." *Johnson*, 132 F.3d at 1283 (quoting *Huddleston*, 485 U.S. at 689).  It is well-established that the testimony of a single witness "satisfies the low-threshold test of sufficient evidence for the purposes of Rule 404(b)." *United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004) (citing *United States v. Hinton*, 31 F.3d 817, 823 (9th Cir. 1994)).

Here, D.H. and K.W. will testify to Carter's involvement in the prior bad acts, and their credibility will be left to the jury.  Their testimony is sufficient to meet the low evidentiary threshold.  The third prong is satisfied.

### 4.    Similarity to Charged Conduct

Fourth, when the Government offers Rule 404(b) evidence to prove intent or knowledge, similarity between the prior acts and the charged offenses strengthens the probative value.  The final element of the Rule 404(b) analysis therefore requires the Government to show that the prior acts are sufficiently similar to the charged

14

conduct when knowledge and intent are at issue. *United States v. Tsinnijinnie*, 91 F.3d 1285, 1288–89 (9th Cir. 1996).

D.H. reports observing multiple naked women and girls at Carter's residences, including individuals who appeared to be as young as 12 or 13 years old. (Doc. 77 at 4). Carter allegedly told D.H. that he provided women with drugs in exchange for sex and that he planned for a 13-year-old and a 15-year-old girl to engage in prostitution from a hotel room. (*Id.* at 4–5). Similarly, K.W. alleges that Carter said he would pay underage girls with money or drugs and then "pimp them out" or create sexually explicit material involving them. (*Id.* at 5). These acts parallel the charged offenses involving Jane Doe 1, a minor whom Carter allegedly coerced into sexual activity and the production of sexual content in exchange for money. (*See* Doc. 86 at 4–5). They also resemble the charged conduct involving Jane Doe 5, a minor to whom Carter allegedly provided drugs, engaged in sexual activity with, and received explicit photographs from in exchange for money. (*See id.* at 7–8).

As the Government notes (*id.* at 15), both the charged conduct and the Rule 404(b) evidence involve Carter trading items of value—money or drugs—for sexual activity with minors. Although the details vary from victim to victim, the pattern of conduct is sufficiently similar to be relevant and probative of Carter's intent with respect to the victims of the charged offenses.

Because the prior acts closely resemble the charged offenses in method, purpose, and context, the similarity supports the inference of intent and knowledge. The fourth prong is satisfied.

### 5.    *Rule 403 Balancing Test*

The remaining question is whether the Government's Rule 404(b) evidence survives the balancing test under Rule 403. Although Carter briefly references the Rule 404(b) factors, his argument focuses primarily on Rule 403. Carter contends that the evidence would be unfairly prejudicial, needlessly cumulative, and confusing to the jury. (Doc. 82 at 5).

Under Rule 403, the Court must determine whether the probative value of the evidence is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Court evaluates any potential prejudice "in the context of other evidence adduced at trial." *United States v. Jayavarman*, 871 F.3d 1050, 1064 (9th Cir. 2017).

The Court agrees with the Government that the Rule 404(b) evidence is probative of Carter's motive and intent with respect to the victims of the charged offenses. The evidence is not needlessly cumulative because it addresses aspects of Carter's intent and motive that the victims' testimony alone cannot establish. The victims can describe their own interactions with Carter, but they cannot speak to his broader pattern of using money or drugs to obtain sexual access to minors or to

16

induce minors to produce sexual content. The Rule 404(b) evidence therefore serves a distinct evidentiary purpose and adds probative value beyond testimony already expected at trial.

Nor does the evidence risk confusing the issues. The prior acts described by D.H. and K.W. closely parallel the charged offenses and relate to Carter's intent and motive—issues the jury must resolve. The evidence does not introduce unrelated or collateral misconduct that might divert the jury's attention from the charged crimes. Rather, it provides context for Carter's alleged pattern of behavior and assists the jury in evaluating whether he acted with the requisite intent.

Moreover, the danger of unfair prejudice is low. Carter is charged with multiple counts of production of child pornography, coercion and enticement, and sex trafficking of a minor. The jury will hear testimony from victims who were as young as 13 and 14 years old when Carter allegedly engaged in sexual conduct with them and sexually exploited them. Testimony that Carter engaged in similar conduct with other individuals is not unduly prejudicial in comparison. Any potential prejudice is further mitigated by the fact that the evidence will be presented through D.H. and K.W., rather than through additional minor victims.

Any remaining risk of prejudice or confusion can be addressed through a limiting instruction explaining the narrow purpose for which the jury may consider the Rule 404(b) evidence. *See United States v. Bradshaw*, 690 F.2d 704, 709 (9th

17

Cir. 1982) (emphasizing the importance of limiting instructions when Rule 404(b) evidence is admitted).

Accordingly, the Rule 403 balancing test weighs in favor of admission.

### B.   Jane Doe 9 – Rule 414 Evidence

Carter contends the Government's evidence regarding Jane Doe 9 is inadmissible under Rules 414 and 403. (Doc. 82 at 10). While the Court's ultimate ruling rests on the Rule 403 balancing of probative value against prejudicial effect, its analysis begins with the framework established under Rule 414.

### 1.   Rule 414

Rule 414(a) provides that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). Thus, three criteria must be satisfied for the rule to apply: first, the defendant must be accused of an offense involving child molestation; second, the prior act must be an offense involving child molestation; and third, the proffered evidence must be relevant.

Here, the Court finds that all three criteria are satisfied. First, the term "child molestation" encompasses the crimes of which Carter is accused. An "offense of child molestation" includes any conduct prohibited by Title 18 of the United States Code, Chapter 110. Fed. R. Evid. 414(d)(2)(B). Carter is charged with seven counts

of production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). (Doc. 72). That offense is within Chapter 110 of Title 18. Carter is therefore "accused of an offense of child molestation" under Rule 414.

Second, the prior acts involving Jane Doe 9 constitute "another offense . . . of child molestation" within the meaning of the rule. Jane Doe 9 is expected to testify that she was 13 years old when Carter solicited sexually explicit images from her via Snapchat. (Doc. 77 at 5–6). Such conduct constitutes production or attempted production of child pornography under Chapter 110. Thus, the prior acts qualify as an offense involving child molestation.

Third, the proffered evidence is relevant. Evidence of a defendant's commission of another child-molestation offense is relevant "because common sense suggests that someone with a propensity to do something is more likely to do the same thing again," and such evidence "therefore[] makes a fact of consequence more or less likely." *United States v. Rogers*, 587 F.3d 816, 821 (7th Cir. 2009); *see* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action.").

Carter's objections do not undermine admissibility. His argument that the Government should have sought a fourth superseding indictment does not bear on whether the evidence satisfies Rule 414. (*See* Doc. 82 at 10). Likewise, his concerns

about Jane Doe 9's memory go to the weight of the evidence, not its admissibility. (*See id.*).

In sum, the Government's proposed evidence falls within the scope of Rule 414. However, Rules 413–415 "establish[ed] a presumption—but not a 'blank check'—favoring the admission of propensity evidence." *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004) (citation omitted). Consequently, evidence admissible under Rule 414 remains subject to the balancing required by Rule 403. *United States v. Thornhill*, 940 F.3d 1114, 1118 (9th Cir. 2019).

### 2. *Rule 403 Balancing Test*

Rule 403 provides that relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Carter argues that the evidence should be excluded because of "the potential to cause confusion among the jury." (Doc. 82 at 10).

"[D]istrict courts must . . . conduct the Rule 403 balancing inquiry in a careful, conscientious manner that allows for meaningful appellate review of their decisions." *United States v. LeMay*, 260 F.3d 1018, 1031 (9th Cir. 2001). To guide that analysis in cases involving Rule 414 evidence, the Ninth Circuit considers five factors:

(1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Id.* at 1028, 1031 (citation and internal quotation marks omitted).  Courts may also consider "any other[] [factors] that might have relevance to a particular case.  *Id.* at 1031.  The Court addresses each *LeMay* factor in turn.

> a.      *Similarity of the Prior Acts to the Charged Acts*

A prior act of molestation admissible under Rule 414 "need not be identical to [the charged offense] to have substantial probative value."  *United States v. Erramilli*, 788 F.3d 723, 729 (7th Cir. 2015).  If any "differences are insignificant and . . . the offenses are overwhelmingly similar," the similarity factor is satisfied.  *Id.*

Here, Jane Doe 9's allegations closely mirror those of the charged victims.  She reports that she began communicating with Carter via Snapchat at age 13; that Carter sent and received sexually explicit images; that he instructed her to photograph specific parts of her body; and that he proposed sending her money in exchange for phone calls, sexually explicit images, and sexual activity.  (Doc. 77 at 5–6).  These allegations are substantially the same as those made by the other Jane Does.  Carter is alleged to have communicated with the victims in the Third Superseding Indictment through online platforms and to have solicited specific

21

sexually explicit images and sexual contact in exchange for money. (*See* Doc. 86 at 4–8). Accordingly, this factor favors admission.

> b.       *Closeness in Time of the Prior Acts to the Charged Acts*

"There is no bright line rule for precluding evidence that is remote in time." *Thornhill*, 940 F.3d at 1120. Carter's conduct involving Jane Doe 9 occurred during the same general period as the offenses charged in the Third Superseding Indictment. The charged conduct spans from November 2019 through September 2024, and Carter's communications with Jane Doe 9 occurred squarely within that timeframe—between approximately September 2019 and February 2024. (*See* Docs. 72, 77). The temporal-proximity factor therefore weighs in favor of admission.

> c.       *Frequency of the Prior Acts*

The frequency factor examines "the number of prior acts the defendant committed regardless of the victim's identity." *United States v. Birdsbill*, 97 F. App'x 721, 723 n.2 (9th Cir. 2004) (citing *LeMay*, 260 F.3d at 1029). Here, the Rule 414 evidence includes Jane Doe 9's account that she and Carter communicated from September 2019 through February 2024. (Doc. 77 at 5–6). Her testimony would make her the ninth witness to describe similar conduct by Carter during roughly the same time period. This is sufficient to demonstrate that Carter's alleged acts toward

Jane Doe 9 "w[ere] not an isolated occurrence." *See LeMay*, 260 F.3d at 1029. The Court therefore concludes that the frequency factor favors admission.

### d.    *Presence or Lack of Intervening Circumstances*

Carter identifies no intervening circumstances, and the Government contends that "[b]ecause all of these offenses occurred during the same time period, there are no relevant intervening circumstances that would counsel against admitting evidence." (Doc. 86 at 21). As in *LeMay*, 260 F.3d at 1029, "[t]he 'intervening events' factor seems to have little relevance." This factor is therefore neutral.

### e.    *Necessity of the Prior Acts Evidence*

"Prior acts evidence need not be *absolutely necessary* to the prosecutor's case in order to be introduced; it must simply be helpful or *practically necessary*." *LeMay*, 260 F.3d at 1029. For example, in *United States v. Yarlott*, the prior acts evidence was deemed "'necessary' . . . because it serve[d] to bolster [the alleged victim's] credibility in the face of charges that she consented to a financial exchange that she [then] regret[ted]." No. CR 20-60-BLG, 2020 WL 6393894, at *6 (D. Mont. Nov. 2, 2020). As the Ninth Circuit explained in *LeMay*, "[i]f the defendant has committed similar acts in the past, the claims of the victim are more likely to be considered truthful if there is substantiation of other assaults." 260 F.3d at 1033 (citation omitted).

The Government asserts that "Jane Doe 9's testimony is highly probative of Carter's sexual interest in children and will be helpful to rebut defenses such as lack of knowledge or intent, the argument that someone else . . . was responsible for some of the conduct against the charged victims, or attacks against the veracity of the charged victims." (Doc. 86 at 21–22). Carter does not specifically address this factor.

The Court agrees with the Government that Jane Doe 9's testimony is probative of Carter's propensity to commit the offense of production of child pornography. Jane Doe 9's account reinforces the credibility of the charged victims in response to any suggestion that they misinterpreted Carter's intent, fabricated their accounts, or attributed the conduct to the wrong person. Because the victims' credibility is central to the case, this factor weighs in favor of admission.

Because the Court finds that four of the five *LeMay* factors favor admission, Jane Doe 9's testimony is permissible at trial. To the extent Carter argues the evidence may confuse the jury or lead it to convict based on the allegations involving Jane Doe 9, an appropriate limiting instruction can mitigate any such risk.

/ / /

/ / /

/ / /

/ / /

## IV.    Conclusion

IT IS HEREBY ORDERED that Jarvis Edmond Carter's Response in Opposition to the Government's Notice of Intent to Admit Evidence of Other Crimes, Wrongs, or Acts by the Defendant (Doc. 82) is DENIED.

DATED this _5th_ day of May, 2026.

SUSAN P. WATTERS
United States District Judge