IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JARVIS EDMOND CARTER,<br><br>Defendant. | CR 24-129-BLG-KSL-1<br><br>MEMORANDUM OPINION AND ORDER |

On September 26, 2024, law enforcement seized Defendant Jarvis Carter's cell phones and computer. (Doc. 144 at 3). On October 15, 2024, law enforcement applied for a search warrant on those devices. (Doc. 151 at 6). Carter now moves to suppress the evidence obtained from the devices, arguing that the 20-day delay between seizure and warrant application violates the Fourth Amendment. (Docs. 143, 144). In response, the government moves to strike Carter's motion as untimely because it was filed one day after the motions deadline. (Doc. 151). The government also argues in the alternative that the motion should be denied on the merits because the delay in applying for a warrant was reasonable. (*Id.*) Because the motion fails on the merits in any event, the Court need not resolve whether Carter has shown good

cause under Rule 12(c)(3), and the motion to strike is denied as moot. On the merits, the government has shown that the delay in applying for a warrant was reasonable, the Court denies the motion to suppress.

## I. Background

Law enforcement began investigating Carter in February of 2020. (Doc. 144 at 3). On September 26, 2024, law enforcement obtained and executed an arrest warrant. (*Id.*) At the time of Carter's arrest, law enforcement seized one cell phone. (Doc. 145-2 ¶19). That same day, while Carter was in custody, he reached out to his partner, directing that individual to factory reset his computers and phones. (*Id.* ¶¶21-26). After hearing this call, law enforcement went to the location where the additional devices were stored and collected three additional cell phones and a computer, but two of the phones had already been reset. (*Id.* ¶¶26-30). On October 15, 2024, law enforcement applied for and received a search warrant on the computer and two cell phones—the one seized from Carter at the time of arrest and one of the phones seized from the other location. (*Id.* ¶¶28, 30, 33). Because two of the phones had already been factory reset by the time law enforcement arrived at his residence, law enforcement did not seek a warrant to search those devices. (*Id.* ¶28). The warrant was returned executed in January 2025. (Doc. 145-4). The government charges Carter with multiple counts of production of child pornography and related offenses, including obstruction of justice for allegedly "persuad[ing] another person … to

alter, destroy, mutilate and conceal an object to impair the object's availability for use in an official proceeding." (Doc. 72). Carter has been in custody since his arrest. (Docs. 5, 20).

The case has been continued 11 times. (Docs. 17, 24, 33, 50, 59, 66, 85, 97, 103, 105, 131). The motions deadline was also continued once. (Doc. 79). On July 7, 2026, nearly two years after his arrest, Carter filed his first motion to suppress his cell phone. (Docs. 108-109). At the time this motion was filed, the motions deadline had passed and trial was scheduled to start on August 26, 2026. (Doc. 105) Carter's counsel moved to withdraw shortly after the motion to suppress was filed (Doc. 111). The Court struck the suppression motion as untimely (Doc. 121) and granted counsel's withdrawal (Doc. 125). The Court then appointed new counsel (Doc. 128) and set a new trial date, which included a new pretrial motions deadline of October 14, 2026 (Doc. 131). One day after that deadline, Carter filed his second motion to suppress the cell phones and computer, arguing that the delay between seizing the devices and applying for a search warrant violates his Fourth Amendment rights. (Doc. 144 at 1-9).

## II. Legal Standard

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. To protect this freedom, the United States Supreme Court "conferred upon defendants in federal prosecutions the right, upon motion and

proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968). Federal Rule of Criminal Procedure 12(b)(3)(C) governs motions to suppress.

"[T]he ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California*, 573 U.S. 373, 381 (2014) (cleaned up). Even if law enforcement ultimately obtains a search warrant, they may violate the Fourth Amendment if they unreasonably delayed obtaining the search warrant. *United States v. Sullivan*, 797 F.3d 623, 633 (9th Cir. 2015). To determine whether a delay between the seizure of an item and the securing of a search warrant to search that item is unreasonable, courts must look at the "totality of the circumstances." *Id.* (internal citations omitted). This determination is made on a case-by-case basis, balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (internal citations omitted).

## III. Analysis

Carter argues that the 20-day delay between seizure of his electronic devices and application for a warrant on those devices was unreasonable under the Fourth Amendment. (Doc. 144 at 1-9). He points to several factors that he argues made the delay unreasonable. He highlights his heightened privacy interests in his cell phone and his lack of consent to search the phone. (*Id.* at 5-6). He also argues that he

enjoyed full protection under the Fourth Amendment because he was not on parole at the time of his arrest. (*Id.* at 8). He further points to the length of the investigation and the fact that law enforcement provided no explanation for the delay. (*Id.* at 5). He cites cases in which courts found shorter periods of delay unreasonable. (*Id.* at 6-7).

In response, the government relies on *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020), to show that the delay between seizure and obtaining the warrant was reasonable. (Doc. 151 at 8). The government first asserts that other courts have upheld searches with similar delays. (*Id.* at 10). The government next asserts that Carter's own actions run counter to his claim that his cell phone was important to him. (*Id.* at 11-12). The government further argues that because he was in custody during the period between the seizure and obtaining the search warrant, he had a reduced property interest in his cell phone. (*Id.* at 12-13). And finally, the government asserts the delay was reasonable in light of the complexity of the case and Carter's alleged attempt to spoliate the evidence. (*Id.* at 13-14). While the government's brief focuses on the phone seized from Carter's pocket at the time of arrest, the Court's analysis applies to all three devices because Carter does not distinguish the devices or challenge the lawfulness of the initial seizures—the three devices were all seized the same day, and the search warrant covered all three devices. (Doc. 145-2).

A seizure lawful at its inception may become unreasonable if the government delays unreasonably in seeking a warrant. *Sullivan*, 797 F.3d at 634-35. When determining whether the totality of the circumstances weighs in favor of a finding of reasonableness, courts consider a number of factors. In the Ninth Circuit, courts have looked at whether an individual consented to a search, whether the defendant was on parole or incarcerated, and the "degree to which the seizure and retention … was necessary for the promotion of legitimate governmental interests." *Id.* Courts in the Ninth Circuit also have looked at the actual length of the delay and whether law enforcement was diligent in pursuing their investigation. *See id.*; *United States v. Dass*, 849 F.2d 414, 415 (9th Cir. 1988). No one factor is dispositive, nor do these factors constitute necessary conditions for the analysis. *Sullivan*, 797 F.3d at 633. Similarly, the Second Circuit considers "[1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *Smith*, 967 F.3d at 206. The government here relies on *Smith's* articulation of relevant factors, but regardless of how this Court packages the factors, the Court must balance the intrusion on Carter's Fourth Amendment interests against the government's alleged interests justifying the intrusion. *Sullivan*, 797 F.3d at 633. Here, the Court concludes that based on the totality of the circumstances the delay was reasonable.

Carter's focus on his privacy interest in his devices misses the mark. (Docs. 144 at 6, 153 at 12-13). Because Carter only challenges the delay in obtaining the warrant, and not the search conducted under it, the relevant interest here is Carter's possessory interest in his devices. *Sullivan*, 797 F.3d at 633. Here, that interest is "reduced" because he was in custody during the time between the seizure and the warrant application. *Id.* at 633. Because Carter was in custody, he could not have made use of his seized property even if he had wanted to. *Id.* Carter argues *Sullivan* is distinguishable because the defendant there consented to the search of his laptop and was on parole, whereas Carter neither consented nor was on parole. (Doc. 144 at 8; Doc. 153 at 14). But consent and parole status in *Sullivan* were only factors in the totality analysis, not prerequisites to finding a diminished possessory interest. 797 F.3d at 633. And *Sullivan*'s reasoning that the defendant could not "have made use" of the device while incarcerated did not depend on either factor. *Id.* Moreover, parole status bears on a different interest than the one at issue here. Carter cites *Samson v. California*, 547 U.S. 843, 849-50 (2006), for a parolee's reduced expectation of privacy, which is a question relevant to the reasonableness of a search. (Doc. 144 at 8). *Samson* says nothing about a detainee's possessory interest in a device he cannot use, which is the relevant question here. Other circuits have applied the same reasoning to defendants in custody who had not consented to searches and were not parolees. *See, e.g.*, *United States v. Sykes*, 65 F.4th 867, 879 (6th Cir. 2023)

(upholding a six-week delay); *United States v. Jackson*, 132 F.4th 1019, 1021-22 (7th Cir. 2025) (upholding a 40-day delay).

Carter also never sought the return of his property. (Doc. 110; Ex. C). Although not dispositive, *see Smith*, 967 F.3d at 208-11, the absence of any request for return is relevant to the weight of Carter's possessory interest. *United States v. Johnson*, 875 F.3d 1265, 1276 (9th Cir. 2017). And while Carter asserts that his partner could have used his property to manage Carter's businesses and affairs, (Doc. 144 at 5), Carter's alleged conduct undercuts this claim. He allegedly asked his partner to wipe his devices (Doc. 145-2), which serves as the basis for the obstruction of justice charge (Doc. 72).[1] By the time law enforcement reached the location where these additional devices were stored, Carter's partner had already wiped two of the phones. (Doc. 145-2 ¶28). To the extent the devices' value to him rested on his partner's legitimate use of them, the record shows that Carter's partner used this access to the devices not to manage Carter's affairs but to destroy evidence at his direction. The fact that Carter was incarcerated during the period between the seizure and the search warrant and could not have used his devices undercuts his claim of intrusion on his Fourth Amendment interests. *Sullivan*, 797 F.3d at 633. And the fact that

[1] The Court relies on the allegations contained in Count 11 in the Third Superseding Indictment for context in balancing the relevant factors. (Doc. 72). Carter is presumed innocent of each allegation in the Third Superseding Indictment, and this Court makes no finding on the merits of any count.

Carter allegedly sought to interfere with the ongoing investigation further undercuts that interest.

On the other side of the balancing inquiry, this Court must consider whether the seizure and retention were necessary to promote legitimate governmental interests. Here, law enforcement arrested Carter on charges related to the production of child pornography and coercion and enticement offenses. (Doc. 2). At the time of his arrest, law enforcement believed he had used electronic devices, including a computer and a cell phone, to undertake the alleged conduct, giving law enforcement probable cause to believe the seized devices contained evidence. (*Id.*). Moreover, two devices were wiped before law enforcement arrived at the location where the devices were stored. (Doc. 145-2 ¶¶ 27-28). Accordingly, the seizure and retention of these devices was necessary to promote the government's concrete interest in preserving evidence of alleged criminal conduct, particularly in light of Carter's alleged conduct following his arrest. *Sullivan*, 797 F.3d at 633. Carter's reduced interest in the seized property and the need to preserve the property as evidence of the crimes alleged weigh against a finding of unreasonableness. The government's interest in retaining the devices was plainly legitimate; the remaining question is whether the time it took to seek a warrant was consistent with that interest.

As further support that the government's delay in seeking a search warrant was reasonable, this Court looks to the length of the delay relative to law

enforcement's diligence. The Ninth Circuit's case law shows how these factors are not dispositive but instead part of the totality of the circumstances courts may consider. For example, in *Sullivan*, the Ninth Circuit found that a 21-day delay was not unreasonable. 797 F.3d at 634. In *Johnson*, 875 F.3d at 1272, 1276, and *United States v. Mulder*, 889 F.2d 239, 241-42 (9th Cir. 1989), the Ninth Circuit found that one-year and two-year delays, respectively, were reasonable. In comparison, in *Dass*, the Ninth Circuit held that delays of 7 to 23 days were unreasonable when law enforcement preemptively detained suspicious packages before obtaining search warrants. 849 F.2d at 414-15. Similarly, in *United States v. Mitchell*—relied on by Carter here—the Eleventh Circuit found a 21-day delay unreasonable. 565 F.3d 1347, 1352 (11th Cir. 2009). What these cases show is that courts do not evaluate the length of time in a vacuum. Instead, courts must consider the length of time in the context of law enforcement's diligence and other factors.

*Sullivan* confirms this. In *Sullivan*, the Ninth Circuit distinguished *Dass*'s conclusion that 7 to 23 days was unreasonable. The court explained that *Dass*'s conclusion rested on the fact that law enforcement preemptively collected suspicious packages prior to executing search warrants which was a "substantial intrusion into the possessory interests of the individuals who placed the packages in the mail." 797 F.3d at 634. Indeed, in *Dass*, the individuals who sent the packages were not yet in custody and retained full possessory interests in the packages. 849 F.2d at 414. The

*Sullivan* court also distinguished *Mitchell*, explaining that the defendant there similarly was not in custody and had a substantial interest in his hard drive, which likely contained information "'of exceptional value to its owner.'" 797 F.3d at 635 (quoting *Mitchell*, 565 F.3d at 1351). In other words, neither *Dass* nor *Mitchell* rested on the exact number of days of delay. Rather, the courts considered that length in the context of other factors.

Here, the record before this Court confirms that the length of time was not unreasonable in light of the nature of the investigation. The government asserts it was dealing with a complex investigation that spanned the course of several years and involves "voluminous" discovery. (Doc. 151 at 13-14). Carter repeatedly requested more time to prepare for trial for this same reason, corroborating the government's view of the complexity of the matter. *See* (Doc. 32 at 2) (requesting a continuance because "discovery on the case is significant"); (Doc. 49 at 2) (same); (Doc. 64-1 at 3) (requesting a continuance because "the Government's allegations are extensive, the discovery is massive, and the Government's discovery continues to grow"); (Doc. 99-1 at 3) (requesting a continuance because "the case is complicated, involves numerous witnesses, and many serious allegations carrying severe penalties"). The investigation continued to develop after the arrest, as reflected in three superseding indictments, including a count arising from Carter's post-arrest conduct. (Docs. 28, 42, 72). In other words, law enforcement was not handling this

matter "at their leisure," *Dass*, 849 F.2d at 415, nor did law enforcement take a two-week break from investigating this case as they did in *Mitchell*, 565 F.3d at 1351. Instead, law enforcement was actively continuing its investigation of a complex matter. While the government did not submit a declaration covering the entire 20-day period, the record is not silent on law enforcement's diligence. Indeed, the search warrant affidavit shows agents actively working on the case from the moment Carter was arrested, responding to a live spoliation threat. (Doc. 145-2). Here, the intrusion on Carter's possessory interest was slight: he was in custody, could not have accessed his electronic devices, and never requested their return. Thus, the government's justification need not be weighty for the balance to tip in its favor.

Based on the totality of the circumstances, the government's 20-day delay in obtaining a search warrant was not unreasonable. The delay did not substantially intrude on Carter's Fourth Amendment interests, particularly when weighed against the government's interest in preserving the evidence contained on Carter's electronic devices.

## IV. Conclusion

Because the delay in applying for a search warrant was reasonable, the Court **DENIES** the motion to suppress. (Doc. 143). Because the motion fails on the merits in any event, the Court need not resolve whether Carter has shown good cause under Rule 12(c)(3), and the motion to strike (Doc. 151) is **DENIED** as moot.

IT IS SO ORDERED.

DATED this 24th day of November, 2026.

Kathleen Lane
KATHLEEN S. LANE
United States District Judge